IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| BRENDA MONK, *on behalf of*, E.M., a minor child | Case No. 4:11cv00036 |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| MICHAEL ASTRUE, Commissioner of Social Security, | |
| Defendant. | By: Jackson L. Kiser Senior United District Judge |

Before me is the Report and Recommendation of the United States Magistrate Judge, recommending that Defendant's Motion for Summary Judgment be granted and the Commissioner's final decision be affirmed. Plaintiff has filed timely objections to the Magistrate's Report and Recommendation. I have reviewed the Magistrate Judge's recommendation, Plaintiff's objections, and the relevant portions of the record. The matter is now ripe for decision. For the reasons stated below, I will **ADOPT** the Magistrate's Report and Recommendation and **GRANT** the Defendant's Motion for Summary Judgment. I **AFFIRM** the Commissioner's final decision and **DISMISS** this case from the docket of this Court.

I.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

On July 2, 2008, Plaintiff Brenda Monk ("Plaintiff") protectively filed an application for childhood supplemental security income on behalf of E.M., a minor child, under the Social Security Act, as amended, 42 U.S.C. §§ 1381 *et seq*. (R. 132–37.)[1] In the application, Plaintiff

---

[1] Plaintiff previously filed an application for childhood supplemental security income on behalf of E.M. on May 26, 2000, alleging that he had been disabled since October 10, 1995, due to a speech impediment, a learning disability, and developmental delays. (R. 48.) The

1

alleged that E.M. was disabled as of January 1, 2000, due to a learning disability (R. 132, 153).[2] Plaintiff's claim was denied initially on September 23, 2008, and on reconsideration on December 10, 2008. (R. 73–75, 85–87.) Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 88–89.) On November 5, 2009, the ALJ held an administrative hearing to determine whether E.M. was under a disability within the meaning of the Social Security Act. (R. 23–32.) Plaintiff, represented by counsel, appeared and testified.

On February 26, 2010, the ALJ submitted his decision including findings of fact and conclusions of law. (R. 11–22.) The ALJ applied the three-step sequential evaluation process applicable to childhood disability cases in which he must consider: (1) whether the child has engaged in substantial gainful activity; (2) whether the child has a medically determinable "severe" impairment; and (3) whether the child's impairment meets or medically equals the requirements of a listing or functionally equals the listing. 20 C.F.R. § 416.924(a)–(d). The ALJ initially found that E.M. was born on October 30, 1994, and was, therefore, a school-age child on the application date and an adolescent at the time of his decision. (R. 14.) He further found that E.M. had not engaged in substantial gainful activity since the application date. (*Id.*) The ALJ proceeded to find that E.M. suffered from the following severe impairments: a learning disability and myopia. (*Id.*) He found, however, that E.M.'s impairments did not meet, medically equal,

---

Commissioner found E.M. disabled at that time. (*Id.*) Subsequently, on April 28, 2005, pursuant to a continuing disability review, the Commissioner determined that E.M.'s condition had improved to the point where he was no longer disabled. (R. 48–49.) After an administrative hearing, the Administrative Law Judge ("ALJ") found that E.M.'s condition had improved and that he no longer met, medically equaled, or functionally equaled any listing. (R. 49.) I affirmed the ALJ's decision by a Memorandum Opinion entered on November 6, 2007. (R. 48–52.) The United States Court of Appeals affirmed my decision on June 17, 2008.

[2] A plaintiff may only receive benefits beginning from the month following the month in which she filed the application. 20 C.F.R. § 416.335. The relevant time period in this case, therefore, is from August 2008 through Febrary 6, 2008—the date of the ALJ's decision.

2

or functionally equal any of the listed impairments. (R. 14–15.) Accordingly, the ALJ found that E.M. had not been disabled, as defined in the Social Security Act, since the application date. (R. 22.)

Subsequently, Plaintiff appealed the ALJ's decision to the Appeals Council. (R. 1–7.) In its June 27, 2011, decision, the Appeals Council found no basis to review the ALJ's February 26, 2010, decision; therefore, it denied review and adopted the ALJ's decision as the final decision of the Commissioner. (R. 1–3.) Plaintiff instituted the present civil action on behalf of E.M. in this Court on July 6, 2011, seeking judicial review of the Commissioner's decision. (Compl. [ECF No. 3].) Thereafter, I referred this matter to United States Magistrate Judge B. Waugh Crigler for consideration of Plaintiff's and the Commissioner's dispositive motions. (Order, Jan. 30, 2012 [ECF No. 11].) On May 9, 2012, Judge Crigler issued his Report and Recommendation in which he concluded that I should grant the Commissioner's Motion for Summary Judgment, affirm the Commissioner's final decision, and dismiss this matter from the docket. (Rep. and Rec. [ECF. No. 18].) On May 23, 2012, Plaintiff filed timely objections to Judge Crigler's Report and Recommendation. (Pl.'s Obj. to Rep. and Rec. [ECF. No. 19].) Plaintiff makes the following objections: (1) the Report and Recommendation erroneously concludes substantial evidence supports the ALJ's decision; and (2) the Report and Recommendation erroneously concludes that E.M. does not have an extreme limitation in acquiring and using information because he has an I.Q. score of greater than 55. (*Id.* ¶ 1, 2.) The Commissioner filed a timely response on June 1, 2012. (Def.'s Resp. to Pl.'s Obj. [ECF No. 20].)

II.  **STANDARD OF REVIEW**

The proper standard of review applicable to a determination by the Social Security Commissioner is well-established. Congress has limited the judicial review that I may exercise

over decisions of the Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. *See* 42 U.S.C. § 405(g); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996). The Fourth Circuit has long defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In other words, the substantial evidence standard is satisfied by producing more than a scintilla but less than a preponderance of the evidence. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527–404.1545; *see Shively v. Heckler*, 739 F.2d 987, 990 (4th Cir. 1984) (noting that it is the role of the ALJ, not the vocational expert, to determine disability). The regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. Unless the decision lacks substantial evidence to support it, the ultimate determination of whether a claimant is disabled is for the ALJ and the Commissioner. *See id.* §§ 404.1527(e), 416.927(e); *see also Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then I must affirm the Commissioner's final decision. *Laws*, 368 F.2d at 642. In reviewing the evidence, I must not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [my] judgment for that of the Secretary.[3]" *Mastro*, 270 F.3d at 176 (quoting *Craig*, 76 F.3d at 589).

---

[3] Or the secretary's designate, the ALJ. *See Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).

4

## III. DISCUSSION

Because Plaintiff's objections address only the functional equivalency step of the sequential evaluation process, I will discuss only this step of the ALJ's childhood disability determination. Under this step, a child is disabled if he suffers functional limitations equivalent in severity to limitations associated with a listed impairment. *Scales ex rel. LaGrone v. Barnhart*, 363 F.3d 699, 703 (8th Cir. 2004) (citing 20 C.F.R. § 416.926a(a)). The applicable regulations require the ALJ to consider six functional domains in making this determination: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for [one]self; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926(a)(d)(i)–(vi) (2011). A child suffers limitations functionally equivalent to a listed impairment if he has an "extreme" limitation in at least one functional domain or "marked" limitations in at least two functional domains. *Scales*, 363 F.3d at 703 (citing 20 C.F.R. § 416.926(a)(a)). An extreme limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). The regulations specify that an extreme limitation "is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.* Accordingly, the ALJ should find that a child has an extreme limitation when he has "a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain." *Id.* § 416.926a(e)(3)(iii). The only functional domain at issue in the present case is Domain 1, acquiring and using information. *Id.* § 416.926a(b)(1)(i). The overarching issue presented is whether substantial evidence supports the ALJ's determination that E.M. does not suffer an extreme limitation in Domain 1.

In his Report and Recommendation, Judge Crigler found that substantial evidence supported the ALJ's determination because E.M.'s Wechsler Intelligence Scale for Children ("WISC-IV") scores were "well above three standard deviations from the mean . . . and thus fail to demonstrate an extreme limitation in cognitive functioning." (Rep. and Rec. pg. 5 [citing *Brown v. Nucor Corp.*, 576 F.3d 149, 156 (4th Cir. 2009); *Moore ex. rel. Moore v. Barnhart*, 413 F.3d 718, 722–23 (8th Cir. 2005)].) Moreover, Judge Crigler noted additional evidence supporting the ALJ's determination such as E.M.'s overall school performance and the Teacher Questionnaires indicating that he did not have a very serious problem in any areas of Domain 1. (*Id.* [citing R. 180, 198].) In her objections, Plaintiff asserts that "I.Q. scores are only one aspect to be examined when determining whether a child functionally equals the listing." (Pl.'s Obj. ¶ 2.) She notes that E.M.'s mental abilities exceed only 3–5 percent of children his age and that his teachers noted serious and obvious problems in Domain 1. (*Id.*) The Commissioner responds that substantial evidence in addition to E.M.'s test scores, such as the Teacher Questionnaires and his overall school performance, supports the ALJ's findings. (Def.'s Resp. to Pl.'s Obj. pg. 1–2.) Therefore, I will consider whether substantial evidence supports the ALJ's determination that E.M. does not suffer from an extreme limitation in Domain 1.

As stated above, the applicable regulations provide that a child has an extreme limitation when he has "a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain." 20 C.F.R. § 416.926a(e)(3)(iii). "'I.Q. scores in listing 112.05 reflect values from tests of general intelligence that have a mean of 100 and a standard deviation of 15, e.g., the Wechsler series.'" *Scales*, 363 F.3d at 704 (quoting 20 C.F.R. Pt. 404, Subpt. P., App'x. 1 § 112.00(D)(9)). Three standard deviations below the mean on the Wechsler series is 55. *Id.*; *Moore*, 413 F.3d at 723

(citing 20 C.F.R. Pt. 404, Subpt. P, App'x. 1 § 11.00D(9)). On March 18, 2008, school psychologist Renee Overby, M.A. ("Overby"), administered the WISC-IV to E.M. (R. 233–37.) E.M. achieved a verbal comprehension score of 79, a perceptual reasoning index of 86, a working memory index of 71, a processing speed index of 83, and a full scale I.Q. of 79, exceeding approximately 5 percent of his peers. (R. 237.) His scores, therefore, were well above 55—the presumptive level for a child suffering from an extreme limitation. Furthermore, Ms. Overby administered the Kaufman Brief Intelligence Test, Second Edition (K-BIT2) to E.M. on January 29, 2007. (R. 240–41.) On this test, E.M. achieved an I.Q. composite score of 87. (R. 240.) E.M.'s test scores are inconsistent with an extreme limitation in Domain 1. Although Plaintiff is correct that test scores may not constitute conclusive evidence, *see Sanchez ex. rel. Sanchez v. Barnhart*, 467 F.3d 1081, 1082 (7th Cir. 2006) (citing *Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003)), additional evidence in the record supports the ALJ's determination.

The regulations provide that an extreme limitation is one that "interferes *very seriously* with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i) (emphasis added). On December 1, 2008, E.R.'s sixth grade health and physical education, math, and science teachers jointly completed a Teacher Questionnaire. (R. 197–204.) Although these teachers noted several Domain 1 activities in which E.M. displays "[a]n obvious problem" or "a serious problem," they failed to identify a single Domain 1 activity in which he displays "[a] very serious problem." (R. 198.) On December 16, 2008, E.M.'s health and physical education teacher, Emily Jones, completed a second Teacher Questionnaire. (R. 179–86.) She noted indicated that E.M. displayed "[a]n obvious problem" in only two out of ten Domain 1 activities and a "serious problem" or "very serious problem" in none. (R. 180.) Therefore, according to his teachers (who have had the opportunity to observe and interact with

7

him on a daily basis), E.M. displays at most only a "marked limitation" in Domain 1. *See* 20 C.F.R. § 416.926a(e)(ii)(2). In addition, the two state agency physicians, Joseph Duckwall, M.D., and Richard Surrusco, M.D., both concluded, that E.M. has "less than marked" limitation in Domain 1 and found no conditions that would severely limit his ability participate in normal daily activities. (R. 271–77; 305–11.)

Moreover, E.M.'s overall academic performance, while admittedly not stellar, has been at a consistently satisfactory level. E.M. earned the following final grades for his sixth grade year in 2008–2009: "A's" in conduct and physical education; "B's" in English, spelling, and history; "C's" in health, reading, and science; and a "D" in mathematics. (R. 220.) E.M. earned the following grades for the first six weeks of his seventh grade year in 2009–2010: "A's" in conduct, physical education, and science; "B's" in English and mathematics, and "C's" in civics and economics and health. (R. 226.) The only course in which E.M. has consistently struggled is mathematics. (R. 220.) Even in that discipline, however, his grades show substantial improvement beginning in seventh grade. (*Compare* R. 220, *with* 225, *and* 226.) Such satisfactory academic performance is inconsistent with an extreme limitation in Domain 1.

Finally, E.M. has attended regular classes and been found ineligible for special education programs. (R. 26–27.) On March 18, 2008, Overby determined that E.M. was not eligible for special education because he "does not display any specific disability." (R. 237–39.) At the November 5, 2009, administrative hearing, Plaintiff testified that E.M. continued to attend regular classes and was denied "extra help[] in a disability classroom" because "they say he fits right in with . . . the grade level." (R. 27.) Plaintiff further testified that the school has found E.M. ineligible for an individualized education plan because "he fits right in the grade of seventh grade." (*Id.*) Despite having repeated kindergarten and second grade (R. 26), E.M. was

8

promoted to seventh grade without reservation. The evidence as set forth above constitutes substantial evidence supporting the ALJ's determination that E.M. is not disabled.

In her objections, Plaintiff points to the results of E.M.'s Woodcock-Johnson III Tests of Achievement administered on November 10, 2008. (Pl.'s Obj. ¶ 2; R. 284.) The results show that E.M. performs two to three years below grade level in several areas. (R. 284.) Although these results may be cause for concern, E.M.'s other test scores, the Teacher Questionnaires, and his overall academic performance as detailed above constitute substantial evidence supporting the ALJ's determination that E.M. did not suffer an extreme limitation in Domain 1. Accordingly, I find that substantial evidence in the record supports the ALJ's determination that E.M. is not disabled under the Social Security Act. In closing, I note that, although I am not without sympathy for the struggles that Plaintiff and E.M. have undergone, I am nevertheless bound by the legal standards governing disability determinations and cannot bend those standards due to sympathy.

## IV.  CONCLUSION

For the reasons set forth above, I will **ADOPT** the Magistrate Judge's Report and Recommendation and **OVERRULE** Plaintiff's objections. Accordingly, I will **GRANT** the Defendant's Motion for Summary Judgment and **AFFIRM** the Commissioner's final decision. This case shall be **DISMISSED** from the active docket of this Court.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record and to Magistrate Judge Crigler.

Entered this 5th day of June, 2012.

s/Jackson L. Kiser  
SENIOR UNITED STATES DISTRICT JUDGE